

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

GENO A. BADAL,                                    )
                                                 )
                    Plaintiff,                    )       No. 06 C 7164
          v.                                     )
                                                 )       Hon. Mark Filip
HINSDALE MEMORIAL HOSPITAL, an                   )
Illinois Corporation, ADVENTIST HEALTH           )
SYSTEM SUNBELT HEALTHCARE                         )
CORPORATION, a Florida Corporation,              )
NYLCARE HEALTH PLANS OF MIDWEST                  )
INC., a Pennsylvania Corporation, GERALD A.      )
LOFTHOUSE, M.D., STEVEN WILK, M.D., and          )
MICHAEL J. COLLINS, M.D., Individuals,           )
                                                 )
                    Defendants.                   )

## MEMORANDUM OPINION AND ORDER
## REMANDING CAUSE TO STATE COURT

Plaintiff, Geno A. Badal ("Plaintiff" or "Mr. Badal"), filed a medical malpractice suit in

the Circuit Court of Will County, Illinois, against Doctors Gerald Lofthouse, Steven Wilk, and

Michael Collins for injuries he received as a result of their allegedly negligent medical treatment.

Plaintiff also sued Nylcare Health Plans, Inc. (which Aetna asserts is actually Aetna

("Defendant" or "Aetna")); Plaintiff alleged that Defendant is responsible under a respondeat

superior theory for the medical negligence of Dr. Lofthouse, Defendant's apparent or implied

agent under the HMO to which Plaintiff belonged.[1]  Following a supplemental disclosure by one

of Plaintiff's medical experts, which Aetna argues revealed for the first time the federal nature of

Plaintiff's claims, Aetna removed the case to federal court, purportedly under the doctrine of

---

[1]  Plaintiff also sued Hinsdale Hospital on a corporate negligence theory and Adventist
Health System Sunbelt Healthcare Corp., the doctors' employer, on a respondeat superior theory.

complete preemption.

Before the Court is Plaintiff's motion to remand for lack of subject matter jurisdiction over his claims, or, in the alternative, to remand for procedural defects in the removal based on its untimeliness. (D.E. 8.) As part of the remand motion, Plaintiff requests costs and fees under 28 U.S.C. § 1447(c), and sanctions under Fed. R. Civ. P. 11. (*Id.* at 8.) For the reasons given below, the Court grants Plaintiff's motion for remand, but respectfully denies Plaintiff's request for costs, fees, and sanctions.

## FACTS

The facts in the case are taken from the operative complaint, the Second Amended Complaint. (D.E. 1, Ex. 3.) It was filed in October 2002, more than four years before Aetna removed the case to federal court. Although the operative complaint was the third iteration of the Plaintiff's complaint, the pleading has not been amended for more than four years as the case has continued to proceed through state court.

Geno Badal received healthcare benefits through his wife's employer, Grove Dental Associates P.C. (D.E. 1, Ex. 3 at 2.) Grove Dental provided benefits pursuant to a healthcare insurance plan with Aetna, f/k/a Nylcare, an MCO or HMO licensed by the state of Illinois. (*Id.*) Dr. Wilk was Plaintiff's primary personal physician and a member of Bolingbrook Family Medicine, a group of physicians approved by Nylcare. (*Id.* at 3.) Dr. Lofthouse was also a member of Bolingbrook Family Medicine, who "held himself out as the agent of Mrs. Badal's HMO." (*Id.*)

On March 14, 1999, Plaintiff severely twisted or "rolled" his right ankle while playing basketball. (*Id.* at 4.) He heard and felt a snapping sensation and collapsed to the floor. (*Id.*)

2

Afterwards, he could not stand on his right foot, which immediately began to exhibit "an extraordinary and unique amount of swelling and discoloration." (*Id.*) Plaintiff went to the Emergency Room of Bolingbrook Medical Center, knowing it to be covered by Aetna, and specifically requested that the Medical Center obtain Dr. Lofthouse's approval for the necessary emergency medical treatment. (*Id.*) Dr. Lofthouse's initial response to Medical Center personnel was that Mr. Badal should be sent home and not treated or admitted by the Medical Center. Upon talking to Plaintiff directly, Dr. Lofthouse ultimately agreed to authorize an X-ray, but he did not authorize any further treatment and maintained that Plaintiff was merely suffering from a sprained ankle. (*Id.* at 4-5.) The crux of Plaintiff's claims is that Dr. Lofthouse and the other Defendant doctors were negligent in their treatment of the ankle injury. (*Id.* at 7 ("While committing the above acts and omissions, Dr. Lofthouse failed to apply, use or exercise the standard of care ordinarily exercised by reasonably well qualified or competent medical doctors.").) In this regard, Plaintiff alleges that Dr. Lofthouse improperly maintained that the injury was "only a sprain," and that even after repeated examinations by Dr. Wilk and Dr. Collins, whom Plaintiff saw by referral, the doctors all failed to properly diagnose the injury— which involved a severed artery and aneurysm in Plaintiff's right ankle that ultimately became severely infected and caused permanent damage, including permanent nerve damage and reflex sympathetic dystrophy. (*See, e.g., id.* at 7.) The operative Complaint further alleges that Dr. Lofthouse denied medical treatment and examination to Mr. Badal to maximize the profitability of Nylcare (Aetna's predecessor), "and/or the collective and individual profitability of Bolingbrook Family Medicine and/or its individual members, including Drs. Lofthouse and Wilk." (*Id.* at 6.)

3

Plaintiff's six-count Second Amended Complaint alleges negligence/medical malpractice against Dr. Lofthouse (*id.* at 1), Dr. Wilk (*id.* at 7), and Dr. Collins (*id.* at 15); against Adventist Health System Sunbelt Healthcare Corporation, as the employer of Dr. Lofthouse and Dr. Wilk, on a respondeat superior theory (*id.* at 19); against Hinsdale Hospital, on a corporate negligence theory (*id.* at 20); and against Aetna, as the principal for Dr. Lofthouse and Dr. Wilk, on a respondeat superior theory (*id.* at 23).

As explained, Plaintiff filed the operative Second Amended Complaint on October 2, 2002. (*See* D.E. 1, Ex. 3.) Roughly four years later, on November 28, 2006, Plaintiff provided Defendants with a supplemental expert disclosure by Dr. Douglas Webster, who added the following opinion to his previously disclosed expert report:

> It was a deviation of acceptable practice on both the part of Dr. Lofthouse individually and as agent for the insurance carrier, Nylcare (and its various entities) to deny payment for Geno Badal['s] examination and treatment while at Bolingbrook medical center. Specifically the insurance company, through its agent Dr. Lofthouse[,] violated accepted standards of care which required the insurance company to pay for a procedure which was required under EMT[A]LA.

(*See* D.E. 1, Ex. 4.) Aetna argues that removal is proper based on this supplemental disclosure, because it constitutes an "other paper from which it may first be ascertained that the case is one which is or has become removable" under 28 U.S.C. § 1446(b). Specifically, Aetna argues that the supplemental expert disclosure reveals that Plaintiff's claims are within the scope of § 502(a)(1)(B) of ERISA, which completely preempts Plaintiff's state law claims. (D.E. 1 at 3.) Aetna also argues that the expert's supplemental disclosure reveals a federal question under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), thus allowing removal under §§ 1441(c) and 1331. (*See id.* at 4.)

4

Plaintiff argues that the district court does not have federal question jurisdiction over his claims—either based on the operative Complaint or the expert's supplemental disclosure—because ERISA does not completely preempt his medical negligence claims and because the expert's supplemental opinion does not create a new federal claim under EMTALA. (*See* D.E. 8 at 8.) Alternatively, Plaintiff argues that, if his operative Complaint were removable, it was removable when filed, and this removal effort, commenced four years later, is barred as untimely. Additionally, Plaintiff seeks fees and costs under 28 U.S.C. § 1447(c), and sanctions under Fed. R. Civ. P. 11, for Defendant's alleged bad faith removal.

## STANDARD FOR REMOVAL

Removal jurisdiction is governed by 28 U.S.C. § 1441, which provides for removal whenever a separate cause of action within the district court's federal question jurisdiction is joined with one or more otherwise non-removable claims. 28 U.S.C. § 1441(c). Precedent teaches that "[c]ourts should interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum." *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993) (citation omitted)). Defendant, as the removing party, has the burden of establishing federal jurisdiction, and "[a]ny doubt regarding jurisdiction should be resolved in favor of the states." *Id.* (collecting cases). Defendant must establish the jurisdictional requirements with "competent proof," that is, evidence which proves to a reasonable probability that jurisdiction exists. *Garbie v. Chrysler Corp.*, 8 F. Supp. 2d 814, 817 (N.D. Ill. 1998) (citing 28 U.S.C. §§ 1332, 1441; *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424 (7th Cir. 1997)).

## DISCUSSION

The determination of jurisdiction on removal involving an ERISA issue is based upon the well-pleaded complaint rule, the ERISA "complete preemption" exception to that rule, and the defense of "conflict preemption" under ERISA. *See Speciale v. Seybold*, 147 F.3d 612, 614 (7th Cir. 1998) (citing *Blackburn v. Sundstrand Corp.*, 115 F.3d 493 (7th Cir. 1997); *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482 (7th Cir. 1996); and *Rice v. Panchal*, 65 F.3d 637 (7th Cir. 1995)). This determination requires the Court to begin with the principles governing removal jurisdiction of the federal courts under 28 U.S.C. § 1441. *See Rice*, 65 F.3d at 639. Under that statute, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district . . . embracing the place where such action is pending." 28 U.S.C. § 1441(a). Aetna brought its removal action pursuant to § 1441(c), which provides that, "[w]henever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates."

Procedures for removal under § 1441 are governed in turn by 28 U.S.C. § 1446, which provides in relevant part:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable . . . .

28 U.S.C. § 1446(b). Because Aetna argues that the case as stated by the "initial pleading" (the operative Second Amended Complaint) was not removable (Aetna must take this position, of course, because if the Second Amended Complaint stated a removable claim, then the deadline for removal passed years ago), Aetna attempts to rely on the second paragraph of § 1446(b). In this regard, Aetna argues that Plaintiff's supplemental expert disclosure constitutes an "other paper" that first revealed the federal nature of Plaintiff's claims.

In deciding whether Aetna properly removed this case, the Court must therefore resolve two questions. First, the Court must determine whether Plaintiff's Second Amended Complaint was removable under § 1441(a). If it was, then Defendant is roughly four years too late in bringing this removal action, and remand to state court is required on that procedural basis. *See* 28 U.S.C. § 1446(b). Unless the Court finds that Plaintiff's operative Complaint was *not* removable, the second inquiry proposed by Aetna—namely, whether Plaintiff's supplemental expert disclosure first attempted to state a federal claim under EMTALA or first revealed that Plaintiff's state law claims were completely preempted by ERISA—is legally irrelevant because removal would be untimely regardless of the content of the supplemental expert disclosure. *See* 28 U.S.C. § 1446(b); *Dorazio v. UAL Corp.*, No. 02 C 3689, 2002 WL 31236290, at *2-3 (N.D. Ill. Oct. 2, 2002). Thus, the Court first addresses whether the operative Complaint was removable at its inception. Finding that it was not, the Court then addresses whether the supplemental expert disclosure presented a new federal claim allowing (for the first time) removal under § 1441(c). The Court finds that the supplemental disclosure presents no such

claim, and further and independently finds that the supplemental disclosure presents no materially new information, such that the putative federal claim should have been removed years earlier if it was (contrary to this Court's view, as discussed herein) properly removable at all. For these various independent reasons, the Court finds that the removal was defective and remands the case to state court.

## A. Removal on the Basis of Plaintiff's Operative Complaint

Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant. *See Caterpillar v. Williams*, 482 U.S. 386, 392 (1987) (citing 28 U.S.C. § 1441(a)). Absent diversity of citizenship, federal-question jurisdiction is required, which means that the plaintiff's cause of action must "aris[e] under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331. The presence or absence of federal-question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *See Caterpillar*, 482 U.S. at 392 (citing *Gully v. First National Bank*, 299 U.S. 109, 112-13 (1936)); *accord, e.g., Louisville & N.R. Co. v. Mottley*, 211 U.S. 149, 152-53 (1908). The well-pleaded complaint rule makes the plaintiff the master of the claim; it also prevents the defendant from controlling the litigation and obtaining a transfer to federal court when the defendant raises a federal question in the responsive pleadings. *See, e.g., Caterpillar*, 482 U.S. at 392 (collecting cases); *Jass*, 88 F.3d at 1486; *Rice*, 65 F.3d at 639.

Through such seminal cases as *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557 (1968), the Supreme Court created an exception to the well-pleaded complaint rule where Congress has completely preempted a given area of state law. While this "complete preemption" concept is

8

now familiar in the law, albeit in limited circumstances only, precedent has repeatedly emphasized that the use of the word "preemption" in this context is misleading, because the issue is one of the exclusivity *vel non* of federal jurisdiction. *See, e.g., Jass,* 88 F.3d at 1487 ("'[T]he use of the term 'complete preemption' is unfortunate, since the complete preemption doctrine is not a preemption doctrine but rather a federal jurisdiction doctrine.'") (quoting *Lister v. Stark,* 890 F.2d 941, 943 n.1 (7th Cir. 1989)); *accord, e.g., Blackburn,* 115 F.3d at 495 ("A separate doctrine, misleadingly called 'complete preemption,' does permit removal when the plaintiff's own claim depends upon ERISA . . . ").

"Complete preemption" deems a putative state law claim federal from its inception if the "federal law occupies the field." *Lehmann v. Brown,* 230 F.3d 916, 919 (7th Cir. 2000); *see also Caterpillar,* 482 U.S. at 393. Whether or not a cause of action has been completely preempted is determined by the intent of Congress. *See, e.g., Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 66 (1987). In *Taylor,* the Supreme Court explained that the "complete preemption" doctrine of federal jurisdiction includes all state actions falling within the scope of § 502(a) of ERISA.[2] *Id.* at 67. For purposes of evaluating the propriety of remand, then, "federal subject matter jurisdiction exists if the complaint concerns an area of law 'completely preempted' by federal law, even if the complaint does not mention a federal basis of jurisdiction." *Jass,* 88 F.3d at 1487 (construing *Rice,* 65 F.3d at 642).

---

[2] Section 502(a) provides:

A civil action may be brought-
(1) by a participant or beneficiary-
(A) for the relief provided for in subsection (c) of this section, or
(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

In addition, there is a second federal "preemption" doctrine—namely, "conflict preemption." *See, e.g., Speciale*, 147 F.3d at 615. This doctrine serves as a defense to a state law action, but it does not confer federal question jurisdiction. *See, e.g., id.* Conflict preemption in this context is based upon § 514(a) of ERISA.[3] "Complete preemption" under § 502(a) encompasses all relevant claims by a participant or beneficiary to enforce his rights under an ERISA plan, and provides for exclusive federal jurisdiction, whereas "conflict preemption" under § 514(a) preempts any state law that may "relate to" an ERISA plan, but it is not a basis for removal jurisdiction. *See, e.g., Jass*, 88 F.3d at 1487.

Aetna argues that Plaintiff's claims are completely preempted under § 502(a). (*See* D.E. 1 ¶¶ 8–10.) The Seventh Circuit has identified three factors that are relevant in determining whether a claim is within the preemptive scope of § 502(a): (1) whether the plaintiff is eligible to bring a claim under that section; (2) whether the plaintiff's cause of action falls within the scope of an ERISA provision that the plaintiff can enforce via § 502(a); and (3) whether the plaintiff's state law claim cannot be resolved without an interpretation of the contract governed by federal law. *Jass*, 88 F.3d at 1487 (citing *Rice, supra*). Although it appears that Plaintiff might have been entitled to bring a claim under the Aetna plan, his claim of medical negligence is not a cause of action that falls within the scope of § 502(a) of ERISA, nor do his state law claims require resolution of an interpretation of the contract governed by federal law. "Where the

---

[3] Section 514(a) provides:

Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

plaintiff seeks recovery for breach of a duty imposed by state law, and the claim does not involve the interpretation of contract terms, there is no complete preemption." *Speciale*, 147 F.3d at 615 (citing *Rice*, 65 F.3d at 644).

In both *Rice* and *Jass*, the Seventh Circuit held that a plaintiff's claims against an ERISA plan, alleging the plan was liable for the medical malpractice of one of the plan's providers under the state law of respondeat superior, did not involve the interpretation of the ERISA plan, and therefore could not be recharacterized as a suit within the scope of § 502(a)(1)(B). *Jass*, 88 F.3d at 1488; *Rice*, 65 F.3d at 645; *see also, e.g., Lehman*, 230 F.3d at 920 ("When the complaint alleges that a welfare-benefit plan has committed a tort—for example, when a physician employed by a HMO that has been offered as a benefit to employees commits medical malpractice—the claim must arise under state law, because ERISA does not attempt to specify standards of medical care.") (citing *Pegram v. Herdrich*, 530 U.S. 211 (2000))[4]; *Blackburn*, 115 F.3d at 494 (holding that a request for apportionment of funds under state law between an ERISA plan and the plaintiff's attorney was not completely preempted and noting that "not even the most expansive reading of ERISA covers motor vehicle collisions, just because part of the recovery may inure to the benefit of the plan"). Like *Jass* and *Rice*, this case involves a medical negligence claim against a plan administrator based on respondeat superior. Plaintiff alleges that Aetna is vicariously liable for the negligent medical treatment of its providers, Dr. Lofthouse and Dr. Wilk. This claim, brought against a plan administrator for vicarious liability of an actual or apparent agent, is not subject to the jurisdictional doctrine of "complete preemption" under

---

4 In *Pegram v. Herdrich*, 530 U.S. 211, 236 (2000), the Supreme Court stated: "ERISA was not enacted out of concern that physicians were too poor to be sued, or in order to federalize malpractice litigation in the name of fiduciary duty for any other reason."

§ 502(a). *See Jass*, 88 F.3d at 1488 (quoting *Rice*, 65 F.3d at 646).[5] Therefore, although

Defendant may have a defense based on "conflict preemption"—the Court need not decide,

because a "conflict preemption" claim, if raised, is for the state court under the *Mottley* well-

pleaded complaint rule—Plaintiff's claims as pleaded are not within the scope of federal

jurisdiction under the "complete preemption" jurisdictional doctrine. Therefore, the Court does

---

5 Defendant's cited authorities do not suggest a different result. In *Aetna Healthcare, Inc. v. Davila*, 542 U.S. 200 (2004), a claim nominally brought under the Texas Health Care Liability Act ("THCLA") was held to fall within the scope of ERISA Section 502(a). *Id.* at 213-14. However, the Court explained, "[t]he duties imposed by the THCLA in the context of these cases, . . . do not arise independently of ERISA or the plan terms." *Id.* at 212. The plaintiffs' suit sought "only to rectify a wrongful denial of benefits promised under ERISA-regulated plans, and . . . [did] not attempt to remedy any violation of a legal duty independent of ERISA." *Id.* at 214. That is not the case in the Badal suit here. *See, e.g.*, D.E. 1, Ex. 3 ¶ 24 (Plaintiff's Complaint alleging that, "[w]hile committing the above acts and omissions, Dr. Lofthouse failed to apply, use or exercise the standard of care ordinarily exercised by reasonably well qualified or competent medical doctors."). In Defendant's other principal citation, *Klassy v. Physicians Plus Insurance Co.*, 371 F.3d 952 (7th Cir. 2004), a claim was preempted under ERISA Section 502(a) when the plaintiffs' "allegations ma[de] clear that Dr. Johnson's decision [at issue] concerned solely the question of eligibility" for plan coverage. *Id.* at 956; *see also id.* ("the sole issue was one of eligibility" under the plan). Again, that is not the case here. *See, e.g.*, D.E. 12 at 7 ("Plaintiff is asking for damages for the injuries caused, and does not give one iota if it was covered under the plan, or whether it should in the future be covered under some plan[.] In short, whether or not it was a violation of ERISA is of no concern to plaintiff.").

not have subject matter jurisdiction over the claim against Defendant and removal, at least on the basis of the operative Complaint, was inappropriate.

The Court notes that even if Plaintiff's operative Complaint *were* removable, removal would be barred at this late date by § 1446(b)'s thirty-day time limit, which begins to run at the filing of a removable Complaint. This 30-day limit is strictly applied. *See, e.g., Northern Illinois Gas Company v. Airco Industrial Gases*, 676 F.2d 270, 273 (7th Cir. 1982). Where a defendant removes after the thirty-day limit, the case is subject to remand, *see, e.g., id.*, and Defendant does not contend to the contrary. Furthermore, the second paragraph of § 1446(b), which provides for removal where the initial pleading was *not* removable but some later pleading or "other paper" reveals a removable claim, does not change this outcome, because the second paragraph of § 1446(b) also requires that the initial pleading *not* be removable. In other words, if the initial complaint *is* removable, a defendant must remove within thirty days of the filing of the complaint, or he waives his opportunity to do so, regardless of any later pleading or paper that might confirm the federal nature of the claim. Therefore, any argument that the operative Complaint in this case was removable because Dr. Lofthouse made coverage decisions for Aetna, such that his denial of treatment was actually a denial of plan benefits that brought the claim against him within the scope of § 502(a)(1)(B),[6] would be unavailing to Defendant because the

---

6 The operative complaint includes allegations that: "At all material times, Dr. Lofthouse was a member of Bolingbrook Family Medicine who additionally held himself out as agent of Mrs. Badal's HMO and who, on behalf of said HMO, possessed the authority to and did in fact determine what medical treatment would or would not be covered or approved by Mrs. Badal's HMO, conduct that was known or that should have been known to Defendant . . . ." (D.E. 1, Ex. 3 ¶ 9); allegations that, "Prior to March 14, 1999 and ostensibly on behalf of Mrs. Badal's HMO, Dr. Lofthouse refused to accept responsibility for or to pay any portion of certain medical bills generated by emergent medical treatment provided to Plaintiff's daughter and son . . . ." (*id.* ¶ 11); and allegations that, "Dr. Lofthouse denied medical treatment and examination to Mr. Badal

13

removal decision based on such an argument would have needed to have been made years ago. It appears that Defendant could have advanced this argument, based on the operative Complaint, *see* D.E. 1, Ex. 3 at 3 (alleging that Dr. Lofthouse "possessed the authority to and did in fact determine what medical treatment would or would not be covered or approved by Mrs. Badal's HMO, conduct that was known or that should have been known to Defendant Nylcare"), but chose not to do so—and correctly in the Court's view, as explained above. Again, if the Complaint was removable at the outset, removal would be barred today, four years after the Complaint was filed, based on § 1446(b)'s thirty-day time limit. In any event, although it is not outcome determinative, the Court finds that the operative Complaint was not removable, and therefore the Court proceeds to the second inquiry, whether Plaintiff's supplemental expert disclosure first presented a federal claim on which Defendant could have properly based its removal action.

---

as alleged above in order to maximize the profitability of Nylcare [*i.e.*, Defendant], and/or the collective and individual profitability of Bolingbrook Family Medicine and/or its individual members, including Drs. Lofthouse and Wilk") (*id.* ¶ 21). While the Court concludes that the Plaintiff's medical malpractice/respondeat superior claim is not one subject to federal jurisdiction under the "complete preemption" doctrine, based on the Seventh Circuit precedent cited above, if the Court is wrong in that regard, then the time limit for this case to be removed passed years ago. In addition, the allegations in the two prior state court iterations of Plaintiff's complaint were no different than the ones in the Second Amended Complaint; those earlier versions of the complaint were filed all the way back in 2001.

## B. The Expert's Supplemental Disclosure

Aetna argues that removal is proper under § 1441(c) and § 1446(b), because Plaintiff's supplemental expert disclosure by Dr. Douglas Webster revealed for the *first* time a federal claim. Dr. Webster's supplemental disclosure stated:

> It was a deviation of acceptable practice on both the part of Dr. Lofthouse individually and as agent for the insurance carrier, Nylcare (and its various entities) [*i.e.*, Aetna] to deny payment for Geno Badal['s] examination and treatment while at Bolingbrook medical center. Specifically the insurance company, through its agent Dr. Lofthouse[,] violated accepted standards of care which required the insurance company to pay for a procedure which was required under EMT[A]LA.

(*See* D.E. 1, Ex. 4.) Defendant argues that this opinion presents a new claim against it for a denial of benefits under § 502(a)(1)(B) of ERISA that is completely preempted, and that this new claim also arises out of Defendant's alleged violation of EMTALA, which confers federal question jurisdiction under § 1331. (*See* D.E. 11 at 2.)

Plaintiff argues that the operative Complaint contained the same allegations as Plaintiff's supplemental expert disclosure. The operative Complaint alleged that "'Dr. Lofthouse [improperly] refused to accept responsibility for or to pay any portions of certain medical bills,'" and that Dr. Lofthouse improperly denied payment in order to boost the Defendant HMO's profitability. (*See* D.E. 12 at 2 (quoting Second Amended Complaint ¶ 11).) The operative Complaint also alleged that Dr. Lofthouse "possessed the authority to and did in fact determine what medical treatment would or would not be covered or approved by Mrs. Badal's HMO, conduct that was known or that should have been known to Defendant." (D.E. 1, Ex. 3 at 3.) Plaintiff further explains that he is not attempting to prove a claim for denial of benefits under ERISA. (*See* D.E. 12 at 7 ("Plaintiff is not even submitting any jury question involving ERISA.

15

Plaintiff does not care if plaintiff was eligible under the plan. The only incidental discussion brought forward by one of plaintiff's expert[s], among a multitude of opinions[,] is that the failure to approve treatment[] was a violation of accepted medical standards, which are elucidated through[] texts, journals, experience, and guidelines[] (such as EMTALA not ERISA). . . . Plaintiff is asking for damages for the injuries caused, and does not give one iota if it was covered under the plan, or whether it should in the future be covered under some plan[.] In short, whether or not it was a violation of ERISA is of no concern to plaintiff.").)

Of course, whether Plaintiff *wants* to assert a claim under ERISA is immaterial if Congress has displaced his state law claim such that it is completely within the jurisdiction of the federal courts. *See Jass*, 88 F.3d at 1488 (quoting *Rice*, 65 F.3d at 642). However, the Court independently finds, as a matter of the record in this case, that the expert's supplemental disclosure does not reveal anything that could not have been determined from the face of the operative Complaint. As a result, even if the Court were wrong above about whether Plaintiff is advancing a claim subject to the complete preemption doctrine, the time to remove such a claim has long since passed for Defendant and remand independently would be justified on that basis.

The supplemental expert disclosure offers an opinion that Dr. Lofthouse violated the required standard of care by failing to pay for a procedure required under EMTALA. (*See* D.E. 1, Ex. 4.) This allegation is contained within an overall record, in terms of the pleadings and proffered expert reports, that overwhelmingly reflects an orthodox, garden-variety medical malpractice case. *See, e.g.*, D.E. 1, Ex. 3 ¶ 24 ("While committing the above acts and omissions, Dr. Lofthouse failed to apply, use or exercise the standard of care ordinarily exercised by reasonably well qualified or competent medical doctors."). To the extent the brief snippet of the

16

record reflected in the supplemental disclosure would suggest a claim within the scope of Section 502(a) of ERISA, the comment refers to nothing more than was already clear in the operative pleadings long before. The operative Complaint alleged that Dr. Lofthouse had negligently denied treatment, and that Dr. Lofthouse had the authority to make coverage decisions on behalf of Defendant. (*See* D.E. 1, Ex. 3 at 3.)[7] The Court has already found that the Complaint was not completely preempted under § 502(a) (and that even if it was, Defendant is four years too late to remove the case). The Court further finds that the supplemental expert disclosure does not add anything new to the Complaint's allegations. Admittedly, the Complaint does not mention ERISA. But neither does the supplemental disclosure. Moreover, the reference to EMTALA does not convert Plaintiff's claim to a federal cause of action under ERISA because Plaintiff's right to relief does not depend on an interpretation of the ERISA plan. *See Jass*, 88 F.3d at 1488; *Sercye-McCollum v. Ravenswood Hospital Med. Ctr.*, 140 F. Supp. 2d 944, 946 (N.D. Ill. 2001).

Plaintiff's claims are grounded in Illinois law regarding negligence and respondeat superior. To prove his claims, Plaintiff will have to establish the standard of care in the applicable medical community and demonstrate that the Defendant doctors' deviation from that standard of care proximately caused his injuries. *See, e.g., Sercye-McCollum*, 140 F. Supp. 2d at 946. Plaintiff argues that the expert's supplemental disclosure merely offers additional evidence

---

7  Moreover, it bears mention that earlier iterations of the complaint against Defendant, dating back to the initial allegations against Defendant in 2001, were similar. *See, e.g.*, D.E. 1, Ex. 1 (initial complaint of 2001) ¶ 10 ("At all material times, Dr. Lofthouse . . . held himself out as the agent of Mrs. Badal's HMO and . . . on behalf of the HMO, possessed said authority to and did in fact determine what medical treatment would or would not be covered or approved by Mrs. Badal's HMO, conduct that was known or that should have been known by Defendant"); *id.* ¶ 12 ("Prior to March 14, 1999 and ostensibly on behalf of Mrs. Badal's HMO, Dr. Lofthouse refused to accept responsibility for or to pay any portion of certain medical bills generated by emergent medical treatment provided to Plaintiff's daughter and son."); D.E. 1, Ex. 2 (Plaintiff's state

of Defendants' negligence in support of Plaintiff's state law claims. (*See* D.E. 8 at 7.) According to Plaintiff, the expert's reliance on EMTALA is akin to an expert's reliance on medical treatises, books, journals, state and federal standards, and whatever else an expert in the field might reasonably rely on in the course of his work—in other words, the expert referred to EMTALA as one of the bases for his opinion on whether Dr. Lofthouse violated the standard of care. (*See* D.E. 12 at 8.)[8]

In summary, as a matter of the factual record in this case, the supplemental expert disclosure adds nothing materially new to Plaintiff's claims, and therefore does not provide a basis for removal under § 1441(c). It follows that this Court lacks subject matter jurisdiction over these claims and must remand to state court under § 1447(c).

### C.    Plaintiff's Request for Sanctions and Fees Is Respectfully Denied

Plaintiff seeks an order requiring Aetna to pay costs and attorney's fees incurred as a result of the removal, pursuant to 28 U.S.C. § 1447(c), as well as sanctions under Rule 11. Section 1447(c) provides for the possibility of fees and costs where the Court finds that it was improper for the defendant to remove the case. In *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 126 S. Ct. 704 (2005), the Supreme Court held that, "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively

court Amended Complaint of 2001) ¶¶ 10, 12 (same).

[8]  Whether an expert properly may offer legal conclusions as to what EMTALA does or does not require is a separate, evidentiary question not raised by the parties and not addressed by the Court; instead, this is a matter for the state court at trial. *See generally Good Shepard Manor Foundation, Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003) (discussing admissibility of expert testimony concerning legal issues under federal law).

reasonable basis for seeking removal." *Id.* at 711. In applying this rule, however, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case. *Id.* Moreover, an award under § 1447(c) requires neither bad faith nor frivolousness on the defendant's part. *See, e.g., Garbie v. Chrysler Corp.*, 8 F. Supp. 2d 814, 820 (N.D. Ill. 1998) (citation omitted).

In *Garbie*, the court awarded costs and fees where the defendant had repeatedly raised the same arguments in support of removal and repeatedly had been rebuffed by the courts. *See id.* Likewise in *Scialo v. Scala Packing Co., Inc.*, 821 F. Supp. 1276, 1278 (N.D. Ill. 1993), the court awarded fees and costs to the plaintiff to cover the defendants' second attempt to remove a case that had been once before removed and remanded for noncompliance with § 1446(b). By contrast, in *Castellanos v. U.S. Long Distance Corp.*, 928 F. Supp. 753 (N.D. Ill. 1996), the court denied Plaintiff's fee request because the case "involve[d] complex issues and defendants ha[d] presented a substantial jurisdictional question." *Id.* at 757.

The Court respectfully exercises its discretion not to award costs and fees in this case. Although Defendant's basis for removal—the supplemental expert disclosure—was found wanting by the Court, and barring that disclosure the removal would have been indisputably four years too late, the Court finds that Defendant did present a respectable removal argument. That basis presented a valid question (though not necessarily a close question) regarding complete preemption under ERISA. *See Leto v. RCA Corp.*, 341 F. Supp. 2d 1001, 1007 (N.D. Ill. 2004) (citing *Castellanos*, 928 F. Supp. at 757). Under these circumstances, the Court finds that an award of costs and fees would be inappropriate. *Accord Martin*, 126 S. Ct. at 711.

The Court also declines to award such costs and fees under Rule 11. *See Burda v. M. Ecker Co.*, 2 F.3d 769, 775–76 (7th Cir. 1993); *Bova v. U.S. Bank, N.A.*, 446 F. Supp. 2d 926, 941 n.8 (S.D. Ill. 2006). In this regard, Plaintiff argues that Aetna removed in bad faith as an attempt to "leverage a dismissal of this action against it in return for refraining from filing its Notice of Removal." (*See* D.E. 8 at 8; *see also id.*, Ex. A (letter from defense counsel stating that Defendant would remove "unless we receive . . . a stipulated executed agreement from plaintiff's counsel agreeing to Aetna's (Nylcare's) dismissal with prejudice from this case").) Plaintiff also argues that Defendant used the removal action to delay the state case so as to gain time to disclose its experts. (D.E. 12 at 11.) Defendant denies that it used the threat of removal to leverage a dismissal. To the contrary, Defendant asserts that the letter referenced in Plaintiff's motion for remand was drafted in response to a direct request from Plaintiff's counsel, who claimed he needed written confirmation of Aetna's plans for removal if Plaintiff was to consider Aetna's request for dismissal. (*See* D.E. 11 at 9–10.) Plaintiff's counsel "stated he wanted to show the requested correspondence to the plaintiff when they would meet to discuss the case." (*See id.* at 10.) (Defendant did not have the opportunity to respond to Plaintiff's argument that it used removal as a delaying tactic, as that proposition was raised only in Plaintiff's reply.) Under these circumstances, the Court has no real reason to doubt Defendant's good faith in removing the case, and respectfully declines to order sanctions. In addition, and independently, there is nothing facially untoward in suggesting that one will seek to remove a case if one's client is not dismissed, at least where, as here, the Defendant appears to believe that it is blameless and has a time-clock at least putatively running on the time to remove. While the Court would certainly consider the appropriateness *vel non* of sanctions if Defendant's removal arguments were

frivolous or without foundation, Defendant's arguments are orthodox and pass a straight-face test, even if they ultimately proved unconvincing. In assessing the appropriateness of sanctions, the Court also notes that the briefing triggered by the removal petition for Plaintiff was modest; any delay was even more modest, as compared to the pace of the litigation in state court.

The Court further notes, independently, that Plaintiff's request for sanctions appears to be procedurally barred. Rule 11 requires that a party who seeks sanctions should bring a separate motion, which Plaintiff has not done. *See* Fed. R. Civ. P. 11(c)(1)(a) ("A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected."); *Certain Underwriters at Lloyd's, London v. Argonaut Ins. Co.*, No. 04 C 5852, 2006 WL 3486882, at \*6 (N.D. Ill. 2006) (quoting same). Plaintiff offers no basis to suggest that these requirements concerning Rule 11 motions were observed.

## CONCLUSION

The Court concludes that Plaintiff has alleged state law causes of action that are not completely preempted under ERISA, and that Plaintiff's supplemental expert disclosure adds nothing new to Plaintiff's claims. Therefore the Court lacks subject matter jurisdiction and accordingly remands to state court under § 1447(c). Even if this Court *did* have subject matter jurisdiction over Plaintiff's operative Complaint, Defendant removed the case four years too late,

such that the removal is defective and independently warrants remand under § 1447(c). Finally, the Court respectfully denies Plaintiff's request for costs, fees, and sanctions.

So ordered.

Mark Filip
United States District Judge
Northern District of Illinois

Date:    5/8/07